**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

WENDELINE MAGNUSSEN,

Plaintiff,

vs.

CASEY'S MARKETING COMPANY,
d/b/a CASEY'S GENERAL STORE, and
MONICA VON SEGGERN,

Defendants.

No. C 09-4078-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

---

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   A. *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   B. *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II. *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   A. *Standards For Summary Judgment* . . . . . . . . . . . . . . . . . . . . 12
   B. *The ADA And The ICRA* . . . . . . . . . . . . . . . . . . . . . . . . . 14
   C. *Magnussen's Disparate Treatment Claim* . . . . . . . . . . . . . . . . 16
      1. *The analytical framework* . . . . . . . . . . . . . . . . . . . . . 16
      2. *Magnussen's prima facie case* . . . . . . . . . . . . . . . . . . 16
         a. *Magnussen's "disability"* . . . . . . . . . . . . . . . . . 17
            i. *Types of disability* . . . . . . . . . . . . . . . . . 17
            ii. *Magnussen's impairment* . . . . . . . . . . . . . . 20
            iii. *Magnussen's substantial limitations* . . . . . . . . 20
         b. *Magnussen's "qualification"* . . . . . . . . . . . . . . . 27
      3. *Magnussen's showing of "pretext"* . . . . . . . . . . . . . . . 32
         a. *Arguments of the parties* . . . . . . . . . . . . . . . . . 32
         b. *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . 33
   D. *Magnussen's Failure-To-Accommodate Claim* . . . . . . . . . . . . . 37
      1. *Analytical framework* . . . . . . . . . . . . . . . . . . . . . . 37

　　　　2.　　*Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . . 38
　　　　3.　　*Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
　　　　　　a.　　*Disability and qualification* . . . . . . . . . . . . . . . . . . . 40
　　　　　　b.　　*Failure to accommodate* . . . . . . . . . . . . . . . . . . . . . 41
　E.  *Magnussen's Retaliation Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . 45
　　　　1.　　*Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . . 46
　　　　2.　　*Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

**III.  CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

I n this case involving claims of disparate treatment, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, applying pre-amendment standards, and the Iowa Civil Rights Act (ICRA), IOWA CODE CH. 216, central questions are whether the plaintiff was even "disabled" because of a "flare up" of a back condition and whether the plaintiff was terminated from her position as the manager of a convenience store for discriminatory or retaliatory reasons rather than for leaving shift vacancies uncovered. The defendants, the employing company and the plaintiff's area manager, assert that they are entitled to summary judgment on all of the plaintiff's claims, while the plaintiff asserts that a reasonable jury could find in her favor on all of her claims.

## I.  INTRODUCTION

### A.  Factual Background

I will not attempt here an exhaustive dissertation on the undisputed and disputed facts in this case. Rather, I will set forth sufficient of the facts, both undisputed and

disputed, to put in context the parties' arguments concerning the defendants' motion for summary judgment. Unless expressly indicated otherwise, the parties agree that the facts stated are undisputed.[1]

Plaintiff Wendeline Magnussen applied for employment as a store manager at defendant Casey's Marketing Company's Casey's General Store in Sergeant Bluff, Iowa, on October 26, 2007. She was interviewed for that position by Tina Krings, the Regional Manager, and defendant Monica Von Seggern, the Area Manager. During the interview, Magnussen disclosed that she had had a back injury in the past and that, for periods of time in the past, she had had medical restrictions on lifting and standing, but that she had always recovered. In fact, from 1993 through 2008, Magnussen suffered approximately four periods of "incapacity" of approximately one to two weeks in bed followed by temporary standing and lifting restrictions, due to "flare ups" of her back condition. Magnussen stated in her interview that her back injury would limit her ability to lift more than fifty pounds, but that she could perform the essential functions of the job, including standing for an extended period of time. Following the interview process, Von Seggern and Ms. Krings made the decision to offer Magnussen the store manager position, and Magnussen accepted. Magnussen began working as the store manager at the Casey's store in Sergeant Bluff in November 2007. Ms. Krings sent Magnussen a Letter of Understanding concerning her employment, dated November 8, 2007, which included a Job Description for the store manager position, stating, among other things, that the store

[1]I have not necessarily stated facts precisely as the parties have stated them in their respective statements of facts or responses to each other's statements of facts; instead, I have occasionally recast them to eliminate disputed language, to track more precisely the language of documents or deposition testimony, and for other editorial or organizational reasons. Nevertheless, I believe that I have accurately indicated what facts are undisputed and which are disputed and why.

manager "[m]ust be able to stand for an extended period of time and to lift up to 50 pounds." Defendants' Appendix at 47. Magnussen signed and returned the Letter of Understanding and the Job Description on November 28, 2007.

The Sergeant Bluff Casey's store was normally staffed with just two employees at any given time, one to work out in front at the register, and one to work in the kitchen. The responsibilities of the store manager at each location were, among other things, to ensure that all shifts were covered, including working additional hours to cover shifts if the store manager could not find another employee to fill the shift.[2] Magnussen testified that, during an average ten-hour shift, she would stand approximately eight hours, including three to five hours standing in one place behind the cash register. The defendants assert that Magnussen was "required" to stand for approximately eight hours, but Magnussen points out that neither her deposition testimony nor any other evidence cited by the defendants states that standing for that length of time was a specified job requirement.

Magnussen did not have any physician's restrictions on her work activity because of her back condition during the first six months of her employment with Casey's, although she did, on occasion, ask other employees to perform tasks that involved lifting items over fifty pounds. That period ended in May 2008, when Magnussen missed work for several days beginning on May 14, 2008, owing to a "flare-up" of her back condition. She was

---

[2]The Letter of Understanding stated that "as Manager, you will be responsible for insuring that all work shifts are covered and will from time to time find it necessary to deal with problems and emergencies at times other than regularly scheduled work hours. On such occasions, you will be expected to give whatever additional time and attention may be necessary to effectively deal with the situation presented, to assure that the Company's interests are protected, and in such cases no additional compensation will be paid." Defendants' Appendix at 43.

4

released by her doctor to return to work on May 23, 2008, with temporary restrictions on her activity because she was temporarily unable to take pain pills as needed while her doctor was evaluating her liver. Magnussen's temporary restrictions required no standing for more than three hours at a time, no lifting more than ten pounds, and no working for more than nine hours per day, five days per week. On July 17, 2008, Magnussen submitted another doctor's note that restricted her to standing no more than three hours in a day (instead of at a time) and lifting no more than ten pounds. Casey's abided by those restrictions.

Other than these restrictions, Magnussen's physician did not place any other restrictions on her activities as a result of her back condition during the summer of 2008. Magnussen admits that these restrictions are the only ones set forth in the physician's notes, but contends that she was restricted in more activities than the notes address. Both Magnussen and the defendants understood and believed that the work-related restrictions imposed by Magnussen's physician on May 23 and July 17, 2008, were temporary. The defendants did not have any knowledge that Magnussen had any restrictions related to any medical conditions other than the standing and lifting restrictions imposed by her physician on May 23 and July 17, 2008, related to her back condition. The parties dispute whether the physician's restrictions meant that Magnussen could not perform the essential functions of her job requiring her to stand and work the register for an extended period of time, because, for example, the defendants characterize the "standing" requirement as standing for up to eight hours a day, but Magnussen contends that standing for three hours per day is standing for "an extended period of time," as specified in her Job Description.

The defendants granted all job modifications and accommodations related to her back condition and related restrictions that Magnussen requested during her employment. Specifically, to accommodate Magnussen's temporary restrictions, Magnussen scheduled

and Casey's paid for an extra employee to come in and work in addition to Magnussen for part of her shift to perform the functions that Magnussen could not perform, primarily working the register after Magnussen's three hours of standing had been exhausted. Magnussen points out that she still worked the forty-five hours per week permitted under her physician's restrictions. Prior to her termination, Magnussen did not propose, request, or accept any accommodation of her restrictions other than Casey's paying an extra person to work in addition to her to perform the functions of her position that she was unable to perform. In July of 2008, Casey's provided Magnussen with a stool to sit on while operating the register to allow her to perform her job within her restrictions, but she declined to use the stool, because she believed that use of the stool alone did not work. Therefore, Casey's continued to pay an extra employee and continued Magnussen's temporary light duty job.

On July 24, 2008, Von Seggern told Magnussen that Casey's could no longer continue her light duty arrangement by paying an extra person to come in to perform the duties that Magnussen could not perform. Instead, Casey's offered to continue to pay Magnussen as store manager until July 30, 2008, but then move Magnussen into a part-time position that she could fully perform with her restrictions in place. Magnussen was not interested in a part-time position, because it would have resulted in reduced pay and benefits. Magnussen contends that she told Von Seggern that she questioned whether Von Seggern could legally demote her to part-time work, when she was only subject to temporary restrictions. The defendants deny that such a conversation ever took place. The parties dispute whether Von Seggern told Magnussen that her demotion to part-time work would be effective immediately or not until July 30, 2008. After her conversation with Von Seggern on July 24, 2008, Magnussen called the Casey's human resources office to discuss the situation and was told that she had until July 30, 2008, to clarify her

restrictions and whether she could continue as store manager. Magnussen felt that her job was threatened at that point.

Magnussen was never actually demoted, however, because on July 28, 2008, Magnussen notified the defendants that she had been released by her physician to return to work with no restrictions, and on July 29, 2008, she provided the defendants with a copy of the physician's release, dated July 25, 2008. Magnussen contends that she felt forced to obtain a full release from her physician to keep her job. The defendants deny that the physician could or would simply change Magnussen's medical restrictions without regard to her actual condition and assert that Magnussen's explanation that the physician advised her that it was not the best thing to do, but that he would do so at her request, is inadmissible hearsay.

Prior to July 2008, Magnussen and Von Seggern had a good working relationship. However, Magnussen thought that Von Seggern was getting "frustrated" with her continuing work restrictions by that time. The defendants deny that Von Seggern was "frustrated" with Magnussen or her restrictions. On July 28, 2008, Von Seggern "wrote up" Magnussen for exceeding her physician's restrictions on July 24, 2008, and on August 1, 2008, Von Seggern also "wrote up" Mangussen as the result of a customer complaint. The customer in question was a former employee of the Casey's store in Sergeant Bluff who had been fired after a "sting" operation for selling cigarettes to a minor. Magnussen denies being rude to the customer and contends that Von Seggern never spoke to her in her investigation of the incident, which Von Seggern denies. Neither of these "write ups" caused any change in the terms or conditions of Magnussen's employment.

Magnussen filed a charge of discrimination with the Iowa Civil Rights Commission (ICRC) on July 30, 2008, apparently arising from the threats to demote her to a part-time position. Magnussen contends that she told one of her workers, Kathy Reynolds, and her

assistant manager, Brenda Husman, that she had filed the charge, but the defendants have submitted affidavits from Reynolds and Husman in which they deny being told that Magnussen had filed the ICRC charge. Von Seggern was not aware of Magnussen's charge of discrimination with the ICRC until after August 8, 2008, because it was not mailed to Casey's by the ICRC until August 8, 2008, and was not received by Casey's until after that date.

On August 6, 2008, Magnussen learned that the evening "pizza shift" would be vacant for approximately one hour before the scheduled employee would arrive. Casey's contends that Magnussen failed to make arrangements to cover the shift during the vacancy, either by calling in another employee or by working the shift herself, so that the vacancy persisted for about an hour. Magnussen contends that she had another employee lined up to come in to fill the shift and believed that the vacancy would only be for about half an hour before that employee could arrive.

Casey's also contends that, on August 7, 2008, Magnussen again left the store knowing that the pizza shift would be vacant for approximately an hour and a half before the scheduled employee would arrive, and failed to make arrangements to cover the shift during the vacancy, either by calling in another employee or by staying to work the shift herself. Magnussen contends that she was unable to make pizzas herself and had found somebody to come in to fill the vacancy. She contends that she attempted to cover the shift when it started at 4:00 p.m. and started calling people to come to fill the shift, eventually finding someone who could come in at 5:30 p.m. Magnussen contends that when she left the store about 5:00 p.m., she believed that somebody would be in the store within half an hour to make pizzas and that Brenda Husman, her assistant manager, had the pizza situation covered. Magnussen contends that, at the time that she left the store on August 7, 2008, she had been on duty since 5:00 a.m. The defendants dispute Magnussen's

version of these events, contending that, although Magnussen had not received any training from management regarding baking pizzas, Magnussen had been "briefed" on making pizza by another employee and had performed that task before, that she left the store knowing that the pizza shift would be uncovered for more than an hour, and that she admitted in her deposition testimony that she "probably should not have done that. . . ." Magnussen admits that she could have worked the gap by staying to work the register while Ms. Husman worked in the kitchen, but she did not do so, because she believed that she had the shift properly covered.

On August 7, 2008, Von Seggern spoke by telephone with Husman, the assistant manager, who told her that the pizza shift was currently not covered, that she was alone in the store, and that the same thing had happened the day before. After Von Seggern spoke with Ms. Husman on August 7, 2008, she terminated Magnussen's employment. Again, at the time that Von Seggern terminated Magnussen, Von Seggern was not aware of Magnussen's charge of discrimination with the ICRC.

Magnussen asserts that other short vacancies in shifts had occurred before at her store and other Casey's stores, and that she had told Von Seggern about the ones at her store, but neither she nor anyone else had received disciplinary action for such vacancies. The defendants contend that the other incidents of temporary shift vacancies are distinguishable, because the managers involved behaved properly by trying to cover the shifts quickly, instead of simply going home when the stores were understaffed, as Magnussen had done.

As of the middle of August 2008, Magnussen remained unable to stand for more than two to three hours without the pain becoming intolerable, even though her physician had released her to work without restrictions on July 25, 2008. The Social Security Administration eventually found that Magnussen was disabled as of August 7, 2008.

### *B. Procedural Background*

Magnussen filed her Complaint (docket no. 1) commencing this action on October 5, 2009, naming as defendants Casey's Marketing Company, doing business as Casey's General Store, and Monica Von Seggern. In Count I of her Complaint, Magnussen asserts that Casey's Marketing Company violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, by failing to accommodate her, issuing her warnings, demoting her, and terminating her employment because of her physical disabilities, record of disability, and perceived disability. In Count II, another ADA claim against defendant Casey's Marketing Company, Magnussen asserts that she engaged in protected activity, "namely requesting accommodations, objections and filing the Civil Rights Complaint," and that, because of her opposition to Casey's Marketing Company's unlawful employment practice, she was warned and terminated. In Count III, designated as supplemental claims against defendant Casey's Marketing Company and individual defendant Monica Von Seggern, Magnussen asserts that the defendants violated Iowa Code Ch. 216, the Iowa Civil Rights Act (ICRA), by failing to accommodate her, warning her, demoting her, and terminating her employment because of her physical disability, and by retaliating against her because she requested accommodations and opposed unlawful discrimination. On each of her claims, Magnussen seeks compensatory damages for economic losses, including back pay with interest, front pay, lost benefits, training, promotions, and seniority, and for non-pecuniary losses, including past and future suffering, emotional distress, and loss of enjoyment of life, costs and expenses, including reasonable attorney's fees, and such other relief as the court may deem proper. She also seeks punitive damages on her ADA claim in Count I, for "intentional and reckless" conduct, liquidated damages on her ADA claim in Count II, for "willful" conduct, and punitive damages on her ICRA claim in Count III, for "willful"

conduct.[3]   Defendants Von Seggern and Casey's Marketing Company filed separate Answers (docket nos. 6 and 7) to the claims against them on December 23, 2009.  A jury trial in this matter has been set to begin on July 11, 2011.

On February 11, 2011, defendants Casey's Marketing Company and Von Seggern jointly filed a Motion For Summary Judgment (docket no. 13), which is now before me, seeking summary judgment on all of Magnussen's claims.  After an extension of time to do so, Magnussen filed her Resistance (docket no. 19) to the defendants' Motion For Summary Judgment on March 14, 2011.  Also after an extension of time to do so, the defendants filed a Reply (docket no. 23) in further support of their Motion For Summary Judgment on March 28, 2011.

No party requested oral arguments on the defendants' Motion For Summary Judgment in the manner required by applicable local rules.  Therefore, I will resolve the motion on the parties' written submissions.

---

[3] "Although punitive damages are available in ADA cases, they are limited 'to cases in which the employer has engaged in intentional discrimination and has done so "with malice or with reckless indifference to the federally protected rights of an aggrieved individual."'"  *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 903 (8th Cir. 2006) (quoting *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 529-30 (1999), in turn quoting 42 U.S.C. § 1981a(b)(1))).  "The ICRA does not allow for punitive damages but also does not include a cap for compensatory damages."  *Baker v. John Morrell & Co.*, 382 F.3d 816, 827 (8th Cir. 2004); *accord Channon v. United Parcel Service, Inc.*, 629 N.W.2d 835, 351 (Iowa 2001).  Neither the ADA nor the ICRA provides for liquidated damages.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."). A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex,* 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley,* 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir. 1995))). In considering whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. *Matsushita,* 475 U.S. at 587-88; *Mosley,* 415 F.3d at 910. However, the court does not weigh the evidence, assess credibility, or determine the truth of the matters presented. *Kammueller v. Loomis, Fargo & Co.,* 383 F.3d 779, 784 (8th Cir. 2004); *Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1376-77 (8th Cir. 1996).

I recognize "that summary judgment is disfavored in employment discrimination cases." *Simpson v. Des Moines Water Works,* 425 F.3d 538, 542 (8th Cir. 2005); *see Woods v. Perry,* 375 F.3d 671, 674 (8th Cir. 2004) ("[S]ummary judgment should be used sparingly in employment discrimination cases . . . ."); *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir. 1994) ("[S]ummary judgment should seldom be used in employment discrimination cases."). This is so, "[b]ecause discrimination cases often turn on

inferences rather than on direct evidence. . . . ," *E.E.O.C. v. Woodbridge Corp.*, 263 F.3d 812, 814 (8th Cir. 2001) (*en banc*) (citing *Crawford*, 37 F.3d at 1341; *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999)), and because "intent" is generally a central issue in employment discrimination cases. *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1071 (8th Cir. 1998) (citing *Gill v. Reorganized Sch. Dist. R-6, Festus, Mo.*, 32 F.3d 376, 378 (8th Cir. 1994)); *see Simpson*, 425 F.3d at 542 (noting summary judgment is disfavored in employment discrimination cases because they are "'inherently fact-based.'" (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 806 (8th Cir. 2003))). Nevertheless, even in employment discrimination cases, "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

I will apply these standards to the defendants' Motion For Summary Judgment.

## B. The ADA And The ICRA

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Tusing v. Des Moines Indep. Community Sch. Dist.*, ___ F.3d ___, ___, 2011 WL 1364477, *6 (8th Cir. April 12, 2011). Congress enacted amendments to the ADA in 2008, which became effective January 1, 2009. *See* ADA Amendments Act (ADAAA) of 2008, Pub.L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008). "The amendments broadened the definition of what constitutes a disability and rejected the strict standards the Supreme Court set forth in

14

*Toyota [Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002)]." *Nyrop v. Independent Sch. Dist. No. 11*, 616 F.3d 728, 734 n.4 (8th Cir. 2010) (citing 122 Stat. at 3554). The defendants assert that the ADAAA is not applicable here, because the events involved occurred in 2008, before the ADAAA became effective, and Magnussen agrees. As the parties recognize, in *Nyrop*, the Eighth Circuit Court of Appeals joined several other Circuit Courts of Appeals in holding that the ADAAA "is not retroactive" and, thus is "inapplicable" to claims of alleged disability discrimination before the effective date of the amendments. *Id.* I agree with the parties that pre-ADAAA standards are applicable here, because the claims involve conduct before the ADAAA became effective.

The prohibition on disability discrimination in the Iowa Civil Rights Act (ICRA), Iowa Code Ch. 216, is similar to the prohibition in the ADA:

> It shall be an unfair or discriminatory practice for any . . . [p]erson to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of the . . . disability of such applicant or employee, unless based upon the nature of the occupation.

Iowa Code § 216.6(1)(a). As the Eighth Circuit Court of Appeals and the Iowa Supreme Court had both recognized, at least before the ADAAA became effective, "ADA and ICRA disability claims are analyzed under the same standards." *Tjernagel v. Gates Corp.*, 533 F.3d 666, 671 (8th Cir. 2008); *accord Tusing*, ___ F.3d at ___, 2011 WL 1364477 at *6; *Nuzum v. Ozark Automotive Distribs., Inc.*, 432 F.3d 839, 842 n.2 (8th Cir. 2005); *Schlitzer v. University of Iowa Hospitals & Clinics*, 641 N.W.2d 525, 529 (Iowa 2002) ("The common goals of the Federal ADA and our civil rights act have encouraged us to look to the federal statutory and regulatory standards in applying our statute").

Consequently, because the ADAAA is inapplicable here, my discussion of Magnussen's "disability" claims applies equally to Magnussen's claims under the ADA and the ICRA.

### C. Magnussen's Disparate Treatment Claim

#### 1. The analytical framework

Because "[t]he key element" in a disparate treatment disability discrimination claim is "discriminatory intent," *see Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004), a disparate treatment claim under the ADA, such as Magnussen's, that is based on circumstantial evidence is analyzed using the *McDonnell Douglas* burden-shifting framework. *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1044 (8th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). That framework requires the plaintiff to develop a *prima facie* case of disparate treatment. *Id.* If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to proffer a legitimate, nondiscriminatory reason for adverse employment action, and if it does, then the plaintiff must show that the proffered reason is a pretext for disability discrimination. *Id.*

#### 2. Magnussen's prima facie case

As the Eighth Circuit Court of Appeals has explained,

> To establish a prima facie case [of disparate treatment] under the ADA, a plaintiff must show "(1) that [she] has a disability within the meaning of the ADA; (2) that [s]he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) that [s]he suffered an adverse employment action due to a disability." *Chalfant [v. Titan Distrib., Inc.]*, 475 F.3d [982,] 988 [(8th Cir. 2007)] (internal quotations and citation omitted).

*Tusing*, ___ F.3d at ___, 2011 WL 1364477 at *6.  The defendants challenge Magnussen's ability to generate genuine issues of material fact on the first two elements of her *prima facie* case, "disability" and "qualification."

### a.    Magnussen's "disability"

**i.    Types of disability**.  As to the first element of the plaintiff's *prima facie* case, the Eighth Circuit Court of Appeals has explained,

> An individual does not prove that he or she has a disability simply by showing an impairment that makes it impossible to do his or her particular job without accommodation.  Rather, establishing "disability" is a significant hurdle that can prevent a person who was denied a job because of an impairment from being covered by the ADA.

*Tiernagel*, 533 F.3d at 671 (quoting *Nuzum*, 432 F.3d at 842-43, with citations omitted).

> A person is disabled within the meaning of the pre–2009 version of the ADA if (1) she has "a physical or mental impairment that substantially limits one or more of [her] major life activities"; (2) she has "a record of such an impairment"; or (3) she is "regarded as having such an impairment." *Chalfant*, 475 F.3d at 988 (internal quotations and citation omitted).  We have previously noted that, under the pre–2009 interpretation of the ADA, "[t]he terms 'major life activities' and 'substantial limitation' must be 'interpreted strictly to create a demanding standard for qualifying as disabled. . . .'" *Gretillat v. Care Initiatives*, 481 F.3d 649, 652 (8th Cir. 2007) (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002)).

*Tusing*, ___ F.3d at ___, 2011 WL 1364477 at *7 (footnote omitted); *see also* 42 U.S.C. § 12102(2)(A)-(C) (defining "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record

of such an impairment; or (C) being regarded as having such an impairment.").
Magnussen contends that she was disabled under all three of these definitions.

The Eighth Circuit Court of Appeals has explained the pre-ADAAA requirements
to prove "actual" disability, as follows:

> Under the ADA and ICRA, a disability means an
> "individual must have (1) 'a physical or mental impairment'
> that (2) 'substantially limits one or more major life activities'
> of the individual." *[Nuzum v. Ozark Automotive Distribs.,
> Inc.*, 432 F.3d 839,] 843 [(8th Cir. 2005)] (citing 42 U.S.C.
> § 12102(2)). Having a physical or mental impairment is not
> enough because the impairment must also comprise a
> substantial limitation of a major life activity. *See id.*

*Tjernagel*, 533 F.3d at 671-72. Moreover,

> Under the ADA, a temporary impairment with little or no
> long-term impact does not constitute a disability. 29 C.F.R.
> § 1630.2(j)(2)(ii)-(iii). Rather, "[t]he impairment's impact
> must . . . be permanent or long term." *[Toyota Motor Mfg.,
> Kentucky, Inc. v.] Williams*, 534 U.S. [184,] 198, 122 S. Ct.
> 681 [(2002)].

*Pittari v. American Eagle Airlines, Inc.*, 468 F.3d 1056, 1063 (8th Cir. 2006).

The Eighth Circuit Court of Appeals has explained the pre-ADAAA definition of
"regarded as" or "perceived" disability, as follows:

> "In order to be regarded as disabled . . . the employer must
> mistakenly believe that the actual impairment substantially
> limits the employee's ability to work." *Chalfant v. Titan
> Distrib., Inc.*, 475 F.3d 982, 989 (8th Cir. 2007) (internal
> citations omitted). "A substantial limitation is present only
> when the employee is 'significantly restricted in the ability to
> perform either a class of jobs or a broad range of jobs in
> various classes.'" *Id.* (quoting *Conant v. City of Hibbing*, 271
> F.3d 782, 784-85 (8th Cir. 2001) (per curiam)). "If an
> employer believes that an employee is unable to perform 'one

> specific job,' then the employee is not regarded as disabled."
>
> *Id.* (citation omitted).

*Tjernagel*, 533 F.3d at 672; *accord Nyrop*, 616 F.3d at 733-36 (also including in the definition of "regarded as" disabled that the employee "[h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment" and that the employee "'[h]as none of the [covered] impairments . . . but is treated by a covered entity as having a substantially limiting impairment.'" (quoting 29 C.F.R. § 1630.2(*l*))). More specifically,

> The [employer's] awareness of [the plaintiff's] physical impairments does not establish the [employer] regarded [the plaintiff] as disabled. *See Milholland [v. Sumner County Bd. of Educ.]*, 569 F.3d [562,] 567-68 [(6th Cir. 2009)]. Nor does the [the employer's] allowance of accommodations establish such. *See Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 335 (7th Cir. 2004).

*Nyrop*, 616 F.3d at 736. Just as temporary restrictions will not establish "actual disability," where an employer did not regard an employee's impairment as more than a temporary condition, the employer did not regard the employee as disabled, and a "perceived disability" claim also fails. *Pittari*, 468 F.3d at 1063.

Finally, the Eighth Circuit Court of Appeals has explained that, under pre-ADAAA standards, "[i]n order to show that she has a record of disability, [the third definition of 'disability' under the ADA], [the plaintiff] must establish she 'has a history of . . . [a] physical impairment that substantially limits one or more major life activities.'" *Nyrop*, 616 F.3d at 735 (quoting 29 C.F.R. § 1630.2(k)). The court had previously explained that "simply being hospitalized [does not] establish[ ] a record of an impairment under the ADA." *Heisler v. Metropolitan Council*, 339 F.3d 622, 630 (8th Cir. 2003) (internal quotation marks and citations omitted). Rather, "the record must be of an impairment that

substantially limits a major life activity." *Id.* Logically, then, to have a record of an impairment that substantially limits a major life activity, the record must be of a permanent or long-term impairment, not just a temporary one. *Cf. Pittari*, 468 F.3d at 1063 (a temporary impairment will not sustain an actual disability or perceived disability claim).

   *ii.    Magnussen's impairment*.   There does not appear to be any dispute that Magnussen has a physical or mental impairment, in the form of impairment of her ability to stand and lift arising from a back problem, as required for a disability discrimination claim based on an "actual" disability, a "perceived" disability (at least as presented here),[4] or a "record of" disability. *See Tusing*, ___ F.3d at ___, 2011 WL 1364477 at *6. Therefore, I will pass on to the next step in the analysis.

   *iii.    Magnussen's substantial limitations*.   The next question, and the more significant one here, is whether Magnussen's impairment either substantially limited one or more major life activities, was mistakenly believed by Casey's Marketing Company to substantially limit one or more major life activities, or established a record of an impairment that substantially limits one or more major life activities. *See Tjernagel*, 533 F.3d at 671-72 (having a physical or mental impairment is required, but is not enough to prove actual or perceived disability, because the plaintiff must show that the impairment did or was perceived to substantially limit a major life activity); *Heisler*, 339 F.3d at 630 (more than a record of hospitalizations is required to show a "record of disability," because the record must be of an impairment that is substantially limiting).  On this issue, there is considerable dispute between the parties.

---

[4]I find no hint in the record that Magnussen asserts a "regarded as" or "perceived" disability claim based on a contention that she "'[h]as none of the [covered] impairments . . . but is treated by a covered entity as having a substantially limiting impairment.'"  *See Nyrop*, 616 F.3d at 733-36 (quoting 29 C.F.R. § 1630.2( 1 )).

The defendants contend that the evidence in this case undisputably establishes that, during the period of her employment with Casey's, Magnussen suffered from no physical or mental impairment that substantially limited any major life activity. They point out that Magnussen did not even identify a major life activity in which she was substantially limited in either her Complaint or in her ICRA submissions. The defendants contend that, at most, Magnussen has identified impairments of a temporary nature that, for example, only gave rise to four short episodes of bed rest, followed by short-term work restrictions, over fifteen years. They contend that temporary or sporadic restrictions are not enough to establish actual disability. Even if Magnussen could overcome the temporary nature of her restrictions, the defendants argue that those restrictions did not substantially limit any major life activities, such as standing, lifting, or working, as Magnussen's specific medical restrictions were not very substantial. As to "record of" disability, the defendants contend that the only records they ever received indicated that Magnussen's restrictions were temporary and that they actually received a copy of a release for Magnussen to return to work without restrictions. Similarly, they contend that, as to "perceived" or "regarded as" disability, Magnussen admits that the defendants had no misperceptions about her back condition or her restrictions and did not believe that she suffered from any additional or different impairments during her employment. They argue, again, that their only perception was that Magnussen suffered from temporary restrictions. Moreover, they argue that their offer of part-time employment to Magnussen, to accommodate her temporary restrictions, destroys any claim that they perceived her to be substantially limited in the major life activity of working.

In contrast, Magnussen contends that there are genuine issues of material fact as to whether or not she was "disabled" within the meaning of the ADA and the ICRA. She contends that there are genuine issues of material fact as to "actual disability" and,

specifically, as to whether or not she was substantially limited in the major life activity of working. She contends that her medical records during and, more particularly, shortly after her employment with Casey's Marketing Company show that her disabilities were not temporary. She also argues that the defendants concentrate on the "flare ups" of her back condition, but ignore her other chronic disabling conditions, including spinal stenosis, fibromyalgia, and osteoarthritis, which caused her to take so much medication to keep it under control that it was damaging her liver. She contends that the record shows that, by the summer of 2008, she was suffering from disabling conditions that had a substantial impact on major life activities, including standing, walking, bending, lifting, stooping, and working. She also contends that, although she received a note releasing her to work without restrictions at the end of July 2008, a jury hearing all of the facts of this case could easily find that this physician's note did not mean that she was not suffering from a disabling condition, because the record will show that she felt that she had no choice but to ask her physician to release her to go back to work with no restrictions in order to save her job. She contends that her restrictions are sufficient for a jury to find that she was substantially limited in major life activities, even if the court doubts the extent of her disabilities. She contends that her application for and eventual receipt of Social Security disability benefits does not preclude her ADA claim as a matter of law, because they do not mean that she could not perform the essential functions of her job at Casey's.

As to a record of disability, Magnussen contends that there is undisputed evidence that the defendants knew of her back condition from the time she started working, and she contends Casey's knew that her back condition was causing her substantial limitations in her ability to stand and lift. She argues that the physician's note at the end of July 2008 did not eliminate this record of her impairment. As to her claim that the defendants regarded her as disabled, Magnussen points to Von Seggern's "knee jerk" reaction of

demoting her to part-time employment based on a restriction that she could not stand for more than three hours a day. Magnussen contends that Von Seggern's reaction indicates that Von Seggern mistakenly believed that Magnussen was permanently unable to perform the functions of her job as store manager and was treating her as having a substantially limiting impairment.

In reply, the defendants argue that Magnussen's medical records from after her employment with Casey's Marketing Company are both irrelevant to her condition during her employment and inadmissible hearsay, without adequate authentication, so that they cannot properly be considered on summary judgment. They also contend that Magnussen is improperly attempting to expand her list of physical ailments, when only her back condition was ever at issue during her employment. They contend that, in any event, Magnussen still has not provided any evidence that any chronic condition had anything more than sporadic or temporary impact on any major life activities.

I find that the record evidence falls well short of generating any genuine issue of material fact that, during her employment with Casey's, Magnussen suffered from any impairment that actually substantially limited any major life activity, that there was a record of any such impairment, or that the defendants perceived Magnussen to be suffering from any such impairment. To the contrary, Magnussen admits, and the record shows, that both Magnussen and the defendants understood and believed that the work-related restrictions imposed by Magnussen's physician on May 23 and July 17, 2008, concerning Magnussen's hours per week, standing, and lifting, were temporary; that Magnussen's physician did not place any other restrictions on her activities as a result of her back condition during the summer of 2008; that these restrictions are the only ones set forth in the physician's notes; and that the defendants did not have any knowledge that Magnussen had any restrictions related to any medical conditions other than the standing and lifting

restrictions imposed by her physician on May 23 and July 17, 2008, related to her back condition. These concessions are fatal to Magnussen's disability discrimination claim, because temporary restrictions will not establish any form of disability. *See Pittari*, 468 F.3d at 1063 (holding that temporary impairments with little or no long-term impact do not constitute an actual disability, because the impairment's impact must be permanent or long term, and where an employer did not regard an employee's impairments as more than temporary, the employer did not regard the employee as disabled); *see supra*, page 20 (concluding that, because disability based on a "record of disability" requires a record of an impairment that substantially limits a major life activity, the record must show impairment that is permanent or long term). Indeed, at the time that the defendants purportedly took adverse employment action against her because of her disability, the defendants knew that Magnussen had been released by her physician to work without restrictions. Although Magnussen contends that she would be able to show that she felt compelled to get a work release to save her job, she has failed to generate a genuine issue of material fact that the defendants would have had any reason to believe that the release reflected anything other than a professional assessment of her ability to work.

The defendants' attempts to accommodate Magnussen's temporary restrictions also do not, as a matter of law, demonstrate that they perceived Magnussen to be disabled. *Nyrop*, 616 F.3d at 736 (the employer's allowance of accommodations does not establish that the employer regarded the employee as disabled). If the employer's attempts to accommodate impairments do not establish that an employer regarded an employee as disabled, then logically, they also do not, as a matter of law, amount to concessions by the employer that the employee had either an actual disability or a record of a disability.

Magnussen tries to escape the conclusion that she is not disabled, at least as to "perceived" or "regarded as" disability, by arguing that Von Seggern's "knee jerk"

reaction of demoting her to part-time employment based on a restriction that she could not stand for more than three hours a day indicates that Von Seggern mistakenly believed that Magnussen was permanently unable to perform the functions of her job as store manager and was treating her as having a substantially limiting impairment. This argument fails, as a matter of law, in the absence of any evidence from which a reasonable factfinder could infer that part-time work was offered as anything other than an accommodation to a *temporary* standing restriction, *i.e.*, that the "demotion" was intended to be permanent, not just another form of "light duty" accommodation. Moreover, Von Seggern's belief that Magnussen could not perform the particular job of store manager does not demonstrate or support an inference that she regarded Magnussen as disabled. *See Tjernagel*, 533 F.3d at 672 ("'If an employer believes that an employee is unable to perform "one specific job," then the employee is not regarded as disabled.'" (quoting *Chalfant*, 475 F.3d at 989 with internal citations omitted).

Similarly, Magnussen cannot escape the conclusion that she is not disabled on the basis of a "record of" disability, because a record of only a handful of prior, temporary periods of restrictions from back problems in the preceding fifteen years does not give rise to any reasonable inferences that the impairments from back problems were permanent or long-term, instead of simply temporary and brief. Magnussen admits that she expressly told Von Seggern and Ms. Krings in her job interview that she had always come back from brief periods off work or working with restrictions because of her back problems. Thus, Magnussen herself went out of her way to create the impression in the people who hired her that she had suffered from nothing more than brief, temporary restrictions in the past. In other words, the "history" of impairments known to Casey's Marketing Company and Von Seggern was not a "'history of . . . [a] physical impairment that substantially limit[ed] one or more major life activities,'" *Nyrop*, 616 F.3d at 735 (quoting 28 C.F.R.

§ 1630.2(k)), but a history of a very few, sporadic incidents of temporary restrictions over fifteen years.

Even if a reasonable juror could infer that Magnussen's impairments from her back condition were more than temporary, a reasonable juror could not infer that those impairments substantially limited any major life activities. As a preliminary matter, only impairments from Magnussen's back condition are relevant, because Magnussen conceded that the defendants did not have any knowledge that Magnussen had any restrictions related to any medical conditions other than the standing and lifting restrictions imposed by her physician on May 23 and July 17, 2008, related to her back condition. Disability discrimination claims cannot be based on impairments that the employer knew nothing about, because an employer cannot intentionally discriminate on the basis of an impairment it knows nothing about. *See Peebles*, 354 F.3d at 765 (noting that "[t]he key element" in a disability discrimination claim is "discriminatory intent"). Similarly, because an employer could not have been aware of impairments diagnosed only after the employee was terminated or that were only determined to be long-term or permanent after the employee was terminated, those impairments shed no light on the employer's intent to discriminate at the time that it made an adverse employment decision.

Here, the impairments that Casey's knew about at the time that it terminated Magnussen did not, as a matter of law, substantially limit Magnussen's major life activities. Although standing is a major life activity, "[a] limited standing limitation," such as Magnussen's limitation to standing for no more than three hours a day, "does not amount to a disability." *Gretillat v. Care Initiatives*, 481 F.3d 649, 653 (8th Cir. 2007) (holding that a physician's order restricting the plaintiff from standing for more than an hour without rest did not substantially limit the major life activity of standing, and citing cases holding that restrictions on standing for more than one hour and standing for no more

than an hour without a break did not substantially limit the major life activity of walking).

Similarly, at least under pre-ADAAA law in this circuit, a lifting restriction alone is not sufficient to substantially limit a major life activity, but must be considered together with limitations on other basic motor functions to determine whether there is a triable issue of disability based on whether, in the aggregate, all of the limitations prevent or severely restrict the plaintiff from doing the set of manual skills that are of central importance to most people's daily lives. *Breitkreutz v. Cambrex Charles City, Inc.*, 450 F.3d at 780, 783 (8th Cir. 2006). Even considered together, Magnussen's lifting and standing restrictions do not demonstrate or raise a triable issue that she was prevented or severely limited from doing the set of manual skills that are of central importance to most people's daily lives. *Id.*

The defendants are entitled to summary judgment on Magnussen's disparate treatment disability discrimination claim on the ground that Magnussen has failed to generate genuine issues of material fact on the first element of her *prima facie* case, that she was "disabled" within the meaning of the ADA.

### b.     *Magnussen's "qualification"*

Although my determination that Magnussen was not "disabled," as a matter of law, is fully dispositive of Magnussen's disparate treatment claim, I will nevertheless consider the defendants' alternative grounds for summary judgment on that claim. One of those alternative grounds is that Magnussen has not generated genuine issues of material fact on the second element of her *prima facie* case, that she was "qualified" for her position at the Casey's General Store in Sergeant Bluff. *See Tusing*, ___ F.3d at ___, 2011 WL 1364477 at *6 (explaining that the second element of the plaintiff's *prima facie* case of disparate treatment because of disability is to show that she was "qualified" to perform the essential functions of her job, either with or without reasonable accommodation).

The defendants contend that Magnussen was not "qualified" for her position at Casey's, either with or without reasonable accommodation. They argue that this is so, because an essential function of Magnussen's job as store manager was to stand for an extended period of time, typically eight hours a day, but she could only stand for three hours a day. They contend that Magnussen has not identified any reasonable accommodation that would have allowed her to meet this requirement (and she rejected the defendants' suggestion that she use a stool to extend the period of time that she could work the register). Magnussen contends that her Job Description expressly required only standing for "an extended period of time," not standing for eight hours a day, and a reasonable juror could find that standing for three hours a day was standing for "an extended period of time."

As the Eighth Circuit Court of Appeals has explained, determination of "qualification" depends upon (1) whether the individual possesses the requisite skills, education, certification, or experience necessary for the job, and (2) whether the individual can, despite impairments, perform the essential functions of the job, either with or without reasonable accommodation. *See EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 568 (8th Cir. 2007). The "essential functions" of a job are not determined solely by a written job description, but by the employer's judgment as to which functions are essential; the amount of time spent on the job performing the function; the consequences of not requiring the incumbent to perform the function; and the current work experience of incumbents in similar jobs. *Id.* at 568-69. Here, Magnussen testified that, during an average ten-hour shift, she would stand approximately eight hours, including three to five hours standing in one place behind the cash register. Moreover, the parties do not dispute that the Sergeant Bluff Casey's store was normally staffed with just two employees at any given time, one to work out in front at the register, and one to work in the kitchen. The record also

shows, beyond dispute, that a third person was required when Magnussen could not stand for the period of time ordinarily required, because of her temporary standing restrictions. On this record, I find that the defendants have met their burden to put forth evidence establishing that standing for approximately eight hours in a ten-hour shift was an essential function of the store manager job, but Magnussen has failed to carry her burden to show that she could perform this essential function, either with or without reasonable accommodation. *Id.* (establishing each party's burden).

On this point, as I explain in somewhat more detail below, beginning on page 43, in my analysis of Magnussen's failure-to-accommodate claim, the record also shows that the defendants attempted to engage in the interactive process to determine reasonable accommodations, by offering Magnussen a stool to use while working the register, but she rejected that offer with no suggestion of an alternative, and the defendants also tried to accommodate Magnussen by offering her a third employee to "cover" the parts of her shift that she could not stand, until doing so became a hardship for the defendants. Prior to her termination, Magnussen did not propose, request, or accept any accommodation of her restrictions other than Casey's paying an extra person to work in addition to her to perform the functions of her position that she was unable to perform. Thus, Magnussen's disparate treatment claim also fails as a matter of law on the ground that Magnussen did not participate in the interactive process to determine whether she was qualified for her position with appropriate accommodations. *See Kratzer*, 398 F.3d at 1045.[5]

---

[5] Again, the defendants' attempts to accommodate Magnussen's temporary restrictions also do not, as a matter of law, demonstrate that they perceived Magnussen to be disabled, conceded that she was actually disabled, or conceded that she had a record of disability. *See supra*, beginning page 24.

In my view, another insurmountable problem with Magnussen's contention that she was "qualified" is that Magnussen is trying to have it both ways, by asserting that she was completely disabled as of the moment that she was terminated, for purposes of obtaining Social Security benefits, which requires the Commissioner to find that there are no jobs in significant numbers in the national economy that she could perform, *see* 20 C.F.R. § 416.920(q), and attempting to use that disability determination to show that she was also disabled within the meaning of the ADA, but was nevertheless able to perform the essential functions of her job at the Sergeant Bluff Casey's General Store. A subsequent application for and receipt of Social Security disability benefits, based on a representation that the plaintiff is unable to perform the essential functions of *any* job, does not necessarily preclude a plaintiff from proving that she could perform the essential functions of the job from which she was terminated, with reasonable accommodation, before she made the Social Security application. *See Hill v. Kansas City Area Transp. Auth.*, 181 F.3d 891, 983 (8th Cir. 1999) (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999)). Nevertheless, the representation in the subsequent Social Security application does not support a plaintiff's ADA claim, without some explanation for the apparent contradiction. *Id.*

Magnussen does not even attempt to explain the contradiction between her ADA claim and her Social Security disability claim, for example, by demonstrating that the Social Security disability determination involved matters determinative of her ability to find jobs available in significant numbers in the national economy, such as her age, education, experience, and residual functional capacity, that were not relevant to her qualifications for her job as a store manager of the Casey's General Store in Sergeant Bluff. *Cf. Finan*, 565 F.3d at 1079 (citing *Cleveland* for the proposition that an *earlier* application for Social Security disability did not preclude an ADA claim, if the plaintiff provided sufficient

explanation for the apparent contradiction, and finding in that case that a sufficient explanation had been given, because "the Social Security Administration did not find that Finan was incapable of performing the essential functions of his job at Good Earth, [but only that] the Administration determined that considering his age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that he could perform," as well as evidence that his medical condition changed over time, so that the Administration found that he was not disabled prior to his termination, but only after that). Where Magnussen has failed to generate any explanation for the apparent contradiction, she has failed to generate any genuine issue of material fact as to her qualification for the job at Casey's General Store despite her subsequent Social Security disability claim, which followed immediately on the heels of her termination.

In short, Magnussen has failed to generate any genuine issues of material fact on the "qualification" element of her *prima facie* case of disparate treatment.

Because Magnussen has failed to generate genuine issues of material fact on the "disability" and "qualification" elements of her *prima facie* case of disparate treatment, the defendants are entitled to summary judgment on her disparate treatment claim. Whatever reluctance to grant summary judgment might ordinarily be appropriate in employment discrimination cases, where the case turns on issues of discriminatory intent, *see Simpson*, 425 F.3d at 542; *Woodbridge Corp.*, 263 F.3d at 814, no such reluctance is appropriate here, where the plaintiff has failed to generate genuine issues of material fact on her fundamental qualification for the disability protections of the ADA and ICRA.

### 3. Magnussen's showing of "pretext"

Although I concluded that Magnussen has failed to generate genuine issues of material fact on her *prima facie* case of disparate treatment, I will nevertheless consider the defendants' alternative contention that, even if Magnussen can establish a *prima facie* case of disparate treatment because of disability, she cannot show that the defendants' proffered reasons for terminating her are a "pretext" for disability discrimination. Such a showing is required at the last stage of the burden-shifting analysis of a disparate treatment disability discrimination claim. *See Kratzer*, 398 F.3d at 1044.

#### a. Arguments of the parties

The defendants argue that, assuming for the sake of argument that Magnussen can generate genuine issues of material fact on her *prima facie* case, Magnussen has not generated a factual dispute on her ability to rebut their showing that she was terminated for legitimate, non-discriminatory reasons. They contend that it is undisputed that one of the responsibilities of a store manager is to ensure that all shifts are covered, including working additional hours to cover shifts if the manager cannot secure another employee to fill a shift. They contend that it is also undisputed that Magnussen left the store on both August 6 and August 7, 2008, knowing that the kitchen shift was not covered and would not be covered for more than an hour. They point out that Magnussen conceded in her deposition that she "probably should not have done that. . . ." They contend that these clear failures to perform her duties provided ample basis for the defendants to terminate Magnussen. They reiterate that, at the time that Von Seggern made the decision to terminate Magnussen, the defendants had received Magnussen's release to work without restrictions. They also argue that instances in which other managers were not terminated for leaving a shift temporarily uncovered are distinguishable, because those instances did involve the managers making appropriate efforts to cover the shifts, not simply leaving

work with the store inadequately staffed. Finally, they contend that the fact that Magnussen was hired and fired by the same person undermines any inference that the termination was pretextual.

Magnussen contends that she has generated genuine issues of material fact that her termination was pretextual, from evidence that Von Seggern was angry with her and had told her that using an extra employee to cover the time that she could not stand was costing too much money; that she had already worked more than ten hours on the days that she went home before the vacant shift was covered; that she did not leave the store until she thought another employee was lined up to cover the vacant shift; that managers, including herself, who had left shifts temporarily uncovered on prior occasions were not terminated; and that Von Seggern made the decision to terminate her without consulting anyone else or adequately investigating the circumstances. Magnussen counters the defendants' argument that there is no inference of disability discrimination where the same person made the hiring and firing decision within a relatively short time by arguing that the extent of her disabling condition was not known until the summer of 2008, well after she was hired. She also contends that the inference of pretext is strengthened, because the termination was retaliatory.

### b. Analysis

If the plaintiff meets her burden to generate a *prima facie* case, the employer must respond by proffering a legitimate, nondiscriminatory reason for its action. *Kratzer*, 398 F.3d at 1044. The Eighth Circuit Court of Appeals has "consistently held that violating a company policy is a legitimate, non-discriminatory rationale for terminating an employee." *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006). Thus, where the defendants assert that Magnussen was terminated for violating the company policy that store managers must cover vacant shifts, if another employee cannot be found,

the burden shifts to Magnussen to demonstrate that this proffered reason is a pretext for disability discrimination. *Kratzer*, 398 F.3d at 1044.

The Eighth Circuit Court of Appeals has explained what a plaintiff must do to show that a proffered justification is a pretext for disability discrimination, as follows:

> "'To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason. . . . [T]he plaintiff must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination.'" *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008) (quoting *Wilking v. County of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998)).

*Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010). More specifically, the plaintiff "'must demonstrate that a discriminatory animus lies behind the defendants' neutral explanations.'" *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008) (quoting *Wilking v. County of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998), with internal quotations and citations omitted). Thus, "'[t]o prove pretext, the employee must do more than show that the employment action was ill-advised or unwise, but rather must show that the employer has offered a "phony excuse."'" *Id.* (quoting *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005), with internal citation omitted). Where, as here, an employee was terminated for violating a company policy, "[t]he relevant inquiry is not whether [the employee] actually violated the company policy." *Id.* Rather, "'[a] proffered legitimate, non-discriminatory reason for termination need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of the termination.'" *Id.* (quoting *Twymon*, 462 F.3d at 935). While pretext can be shown by demonstrating that similarly-situated employees were treated differently, the plaintiff "'has the burden of

proving that he and the disparately treated [employees] were similarly situated in all relevant respects.'" *Id.* at 770 (quoting *Sherman v. Runyon*, 235 F.3d 406, 409 (8th Cir. 2000)). A court may properly grant summary judgment, if the plaintiff fails to show that there is a genuine issue of material fact as to whether the employer's proffered justification was a pretext for an illegal discriminatory motive based on disability. *Id.*

There is no genuine dispute here that Magnussen violated company policy by failing to cover the shift vacancies on August 6 and 7, 2008, herself, and leaving the store before the shift vacancies were covered. *See id.* at 769 (violation of a company policy is a legitimate ground for termination). Indeed, Magnussen herself admitted that she "probably should not have done that. . . ." Defendants' Appendix at 30 (deposition testimony of Wendeline Magnussen). Moreover, even supposing that Magnussen's evidence suggested that she had not technically violated the policy, because she had arranged for another employee to come in—and I do not believe there is any genuine dispute that the violation here not only occurred, but that it was more than technical—Magnussen has presented no evidence at all to suggest that Von Seggern did not honestly believe that Magnussen had violated company policy when she terminated her. *McNary*, 535 F.3d at 769. Thus, there is not the merest hint from the record that the defendants' articulated reason for terminating Magnussen was false. *Id.* (explaining that falsity of the articulated reason is the first element of proof of pretext).

Nor has Magnussen generated a genuine issue of material fact that disability discrimination was the real reason for her termination. *Id.* (explaining that the second element of proof of pretext is that disability discrimination was the real reason). Magnussen's contentions that she had already worked more than ten hours the days that she went home before the vacant shift was covered; that she did not leave the store until she thought that another employee was lined up to cover the vacant shift; and that Von

Seggern made the decision to terminate her without consulting anyone else or adequately investigating the circumstances do no more than suggest that Von Seggern's decision to terminate her might have been harsh, ill-advised, or unwise, but they simply do not suggest that the proffered reason was a "'phony excuse.'" *Id.* at 769 (quoting *Henderson*, 403 F.3d at 1034). Similarly, any factual dispute over Magnussen's contention that Von Seggern was angry or frustrated with her over the problems of attempting to accommodate her restrictions—which the defendants deny—is not enough to infer that disability discrimination was the reason for Von Seggern's decision to terminate Magnussen, because there is no dispute that, by the time of the termination, Von Seggern believed that Magnussen's work restrictions had been lifted by her physician.

Equally unavailing is Magnussen's attempt to show pretext from supposed disparate treatment of similarly-situated managers. *Id.* (noting that instances of disparate treatment of similarly situated persons may support a claim of pretext). Here, the defendants have pointed to evidence that the managers not disciplined for temporary shift vacancies behaved quite differently, in that they continued to attempt to fill the vacancies instead of simply leaving, so that they were not similarly situated in all relevant respects, and Magnussen has not shown otherwise. *Id.* (noting that the plaintiff's burden is to prove "that he and the disparately treated [employees] were similarly situated in all relevant respects" and holding that, where the plaintiff had failed to generate a genuine issue of material fact on that issue, summary judgment in favor of the employer was appropriate).

Therefore, in the alternative, the defendants are entitled to summary judgment on Magnussen's disparate treatment claim on the ground that she has failed to generate genuine issues of material fact that the proffered reasons for her termination are a pretext for disability discrimination. Although courts are reluctant to grant summary judgment in employment cases where the disposition depends upon discriminatory intent, *see Simpson*,

425 F.3d at 542; *Woodbridge Corp.*, 263 F.3d at 814, that reluctance cannot prevent summary judgment when, as here, the plaintiff fails to generate genuine issues of material fact on the very question of discriminatory intent. *See Reeves*, 530 U.S. at 143.

### D. Magnussen's Failure-To-Accommodate Claim

Magnussen also asserts a failure-to-accommodate claim under the ADA and ICRA. The defendants seek summary judgment on this claim, as well.

### 1. Analytical framework

"An employer's failure to make a reasonable accommodation [to an employee's disability] is a separate form of prohibited discrimination under . . . the ADA. . . ." *Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 870 (8th Cir. 2008). However, only "actual disability" will support a failure-to-accommodate claim. *Finan v. Good Earth Tools, Inc.*, 565 F.3d 1076, 1080 (8th Cir. 2009) (noting that "an employee who is 'regarded as disabled' is not entitled to a reasonable accommodation," citing *Weber v. Strippit, Inc.*, 186 F.3d 908, 917 (8th Cir. 1999)); *Martinez v. Cole Sewell Corp.*, 233 F. Supp. 2d 1097, 1132 (N.D. Iowa 2002) (granting summary judgment on a failure-to-accommodate claim based on a "record of disability," and holding that only "actual disability" will support such a claim, because a person without an actual disability would not need any accommodation).

A failure-to-accommodate claim is not analyzed under the *McDonnell Douglas* burden-shifting analysis, "because a claim against an employer for failing to reasonably accommodate a disabled employee does not turn on the employer's intent or actual motive." *Peebles*, 354 F.3d at 766. Instead, "discrimination occurs when the employer fails to abide by a legally imposed duty." *Id.* at 767. Such a claim is subject to "'a modified burden-shifting analysis.'" *Id.* at 766 (quoting *Fenney v. Dakota, Minn. &*

*Eastern R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003)). In that analysis, the plaintiff must first make a facial showing that she had an ADA disability and that she was a "qualified individual," that is, that she possessed the requisite skill, education, experience, and training for her position and that she was able to perform the essential functions of her job, with or without reasonable accommodation. *Fenney*, 327 F.3d at 712. Furthermore,

> [I]f the employee cannot perform the essential functions of the job *without* an accommodation, he must only make a "facial showing that a reasonable accommodation is possible . . . ." [*Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108,] 1112 [(8th Cir. 1995)] (emphasis added). "The burden of production [then] shifts to the employer to show that it is unable to accommodate the employee." *Id.*; *Fjellestad [v. Pizza Hut of Am., Inc.]*, 188 F.3d [944,] 949 [(8th Cir. 1999)]. "If the employer can show that the employee cannot perform the essential functions of the job even with reasonable accommodation, [then] the employee must rebut that showing with evidence of his individual capabilities." *Benson*, 62 F.3d at 1113 (citations omitted). "At that point, the employee's burden merges with his ultimate burden of persuading the trier of fact that he has suffered unlawful discrimination." *Id.* (citations omitted).

*Fenney*, 327 F.3d at 712.

## 2.     *Arguments of the parties*

The defendants contend that Magnussen's failure-to-accommodate claim fails, as did her disparate treatment claim, because Magnussen was not "disabled" within the meaning of the ADA and was not "qualified" for her position at Casey's. They also contend that Magnussen's "accommodation" claim fails as a matter of law for the further reason that they complied with every work restriction imposed by Magnussen's physician and attempted to arrive at a reasonable accommodation, but could not do so. They point out that Magnussen rejected using a stool as a reasonable accommodation of her standing

restrictions and rejected standing for three hours, resting, and then standing again, to allow the defendants to stop scheduling an extra worker. However, Magnussen responded with a second physician's note, submitted on July 17, 2008, that restricted her to standing no more than three hours in a day (instead of three hours at a time). They also point out that Magnussen never suggested any other accommodation for her purported disability. The defendants also contend that there is no dispute that they complied with all of Magnussen's restrictions for nearly two months by hiring a third employee to cover the portion of Magnussen's shift that she could not stand. They add that, even when an employee is actually disabled and entitled to accommodation, courts have held that employers are not required to pay an additional employee to perform the essential functions of a disabled employee's job, so that they were entitled to stop this form of accommodation when it became a hardship. They also contend that offering Magnussen a part-time position was a reasonable accommodation, because she could fully perform the job within the job restrictions then in place, and such a reassignment may be a reasonable accommodation, even if it involved a reduction in pay and benefits. Finally, they argue that any obligation that they may have had to accommodate Magnussen's disability ended when Magnussen provided a note from her physician that she could work without restrictions, which occurred before the reassignment to part-time duties was to take effect.

Magnussen casts the proffered reassignment to a part-time position in a very different light, arguing that, when presented with the additional standing restrictions in mid-July, instead of engaging in the interactive process required by the ADA to explore how she could continue to work as store manager under those restrictions, Von Seggern immediately told Magnussen that she would be demoted within a week to a part-time employee position with reduced pay and no benefits. She argues that, at that point, because Casey's was obviously no longer willing to work with her, she believed that she

had no choice but to have her physician release her from her restrictions in spite of her physician's concerns about her condition. She contends that a reasonable jury could conclude that, before an employer goes to the extreme of reassigning an employee to a job with lower pay and benefits, as a purported accommodation, the employer must follow through with the interactive process to determine whether reasonable accommodations are possible. Magnussen contends that the defendants should have explored other ways that she could have worked the register while sitting, such as reconfiguring the register area to make certain things within reach.

In reply, the defendants assert that Magnussen offers no supporting evidence for her argument that they failed to engage in the interactive process. They contend that the record shows, beyond dispute, that they continued to try to work with Magnussen through the summer of 2008, granted every "accommodation" that she requested, but the only "accommodation" that she would accept during her employment was to pay an additional employee to perform the essential functions of her job that she could not. Thus, they contend that the party that failed to engage in the interactive process was Magnussen. They contend that Magnussen still has not offered any evidence that she actually could have been reasonably accommodated in the manner she belatedly suggests in her resistance to summary judgment.

### 3. Analysis

#### a. Disability and qualification

Just as a plaintiff asserting disparate treatment under the ADA must establish that she was "disabled" and "qualified" for the position in question, with or without reasonable accommodation, a plaintiff asserting a failure-to-accommodate claim under the ADA must also establish "disability" and "qualification." *Fenney*, 327 F.3d at 712 (under the burden-shifting analysis applicable to a failure-to-accommodate claim, the plaintiff must first make

a facial showing that she had an ADA disability and that she was a "qualified individual"). For the same reasons that I found, above, that Magnussen failed to generate genuine issues of material fact on the comparable elements of her *prima facie* case of disparate treatment, I now find that she has failed to generate genuine issues of material fact on these elements of her failure-to-accommodate claim. Again, whatever reluctance to grant summary judgment might ordinarily be appropriate in employment discrimination cases, where the case turns on issues of discriminatory intent, *see Simpson*, 425 F.3d at 542; *Woodbridge Corp.*, 263 F.3d at 814, no such reluctance is appropriate here, where the plaintiff has failed to generate genuine issues of material fact on her fundamental qualification for the protections of the ADA or ICRA from an employer's failure to accommodate a disability.

### b.     *Failure to accommodate*

My determination that Magnussen was neither "disabled" nor "qualified" is fully dispositive of her failure-to-accommodate claim. Nevertheless, I will consider the defendants' alternative argument for summary judgment on this claim, which is that, assuming that Magnussen was disabled, they met all of the accommodations that Magnussen requested, but that Magnussen is responsible for the breakdown of the interactive process to determine what reasonable accommodations were possible or appropriate.

Determination of whether an accommodation is possible requires an interactive process that starts with the employee's request for accommodation.

> If an employee fails to make a request for accommodation, then his employer has no duty to accommodate. *Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002). If, however, an employee does request an accommodation, the employer must engage in an interactive process to determine whether reasonable accommodations are possible. *Id.* If such accommodations are possible, then the employer must

reasonably accommodate that request, but need not provide the exact accommodation requested. *Cravens v. Blue Cross & Blue Shield,* 214 F.3d 1011, 1019 (8th Cir. 2000).

To prove that an employer failed to participate in an interactive process regarding a reasonable accommodation, an employee must show the following: (1) that the employer knew she was disabled; (2) that she requested accommodations; (3) that the employer did not make a good faith effort to assist her in making accommodations; and (4) that the employer could have reasonably accommodated, but for its lack of good faith. *Id.* at 1021. When an employer fails to engage in an interactive process, that is prima facie evidence of bad faith. *Ballard,* 284 F.3d at 960.

*Buboltz*, 523 F.3d at 870. Both parties, not just the employer, have an obligation to participate in the interactive process, and where the plaintiff fails to fulfill her responsibility in the interactive process, for example, by failing to provide information necessary for her employer to fashion an appropriate accommodation, the plaintiff's failure to do so may bar her accommodation claim. *Kratzer*, 398 F.3d at 1045; *see also EEOC v. Convergys Customer Mgmt. Group, Inc.*, 491 F.3d 790, 796 (8th Cir. 2007) (discussing *Kratzer* and explaining when the plaintiff is responsible for the breakdown of the interactive process).

For reasons stated above, in reference to Magnussen's disparate treatment claim, there is no genuine dispute here that Magnussen could not perform the essential functions of her job *without* an accommodation. *See Fenney*, 327 F.3d at 712 (explaining that the interactive process requirements arise when the plaintiff cannot perform the essential functions of her job without an accommodation). The first element of proof that the employer failed to engage in the necessary interactive process to determine whether a reasonable accommodation was possible is the employer's knowledge of disability. *See Buboltz*, 523 F.3d at 765; *see also Gretillat*, 481 F.3d at 653 (noting that the district court

considered only limitations known to the employer).  Thus, as was the case with Magnussen's disparate treatment claim, the only disability at issue on Magnussen's failure-to-accommodate claim is her back condition, which resulted in restrictions on Magnussen's work hours per week and her ability to stand and lift, as this is the only disability known to the defendants.  I will also assume, at least for the sake of argument, that Magnussen requested some accommodation, triggering a duty to engage in the interactive process.  *See Buboltz*, 523 F.3d at 870 (identifying a request for accommodation as the second element of a claim that the employer failed to engage in the interactive process to determine if a reasonable accommodation was possible).  Thus, the fighting issues here are whether the defendants made a good faith effort to assist Magnussen in making accommodations, whether the defendants could have reasonably accommodated her disability, but for a lack of good faith, *see id.*, or whether Magnussen is, instead, the party responsible for the breakdown of the interactive process.  *See Kratzer*, 398 F.3d at 1045; *see also Convergys Customer Mgmt. Group, Inc.*, 491 F.3d at 796.

The record shows beyond dispute that the defendants attempted to engage in the interactive process to determine reasonable accommodations.  First, the defendants offered Magnussen a stool to use while working the register, but she rejected that offer with no suggestion of an alternative.  The defendants also tried to accommodate Magnussen by offering her a third employee to "cover" the parts of her shift that she could not stand, until doing so became a hardship for the defendants, in a store normally staffed by just two employees at a time.  Magnussen does not dispute that, prior to her termination, she did not propose, request, or accept any accommodation of her restrictions other than Casey's paying an extra person to work in addition to her to perform the functions of her position that she was unable to perform.  "[T]he employer is not obligated to provide the accommodation requested or preferred by the employee," just a "reasonable"

accommodation. *Cravens v. Blue Cross and Blue Shield fo Kansas City*, 214 F.3d 1011, 1019 (8th Cir. 2000). The ADA expressly provides that a covered entity is not required to provide an accommodation that it demonstrates "would impose an undue hardship on the operation of the business of the covered entity. . . ." 42 U.S.C. § 12112(b)(5)(A); *Battle v. United Parcel Service, Inc.*, 438 F.3d 856, 862 (8th Cir. 2006) (quoting the statute). Specifically, "[a]n employer is not required to hire additional people or assign tasks to other employees to reallocate essential functions that an employee must perform." *Epps v. City of Pine Lawn*, 353 F.3d 588, 593 n.5 (8th Cir. 2003) (citing *Hatchett v. Philander Smith Coll.*, 251 F.3d 670, 675 (8th Cir. 2001)). Moreover, while reassignment is an accommodation of last resort, if the employee cannot be accommodated in her existing position, the employer is not required to create a new position as an accommodation, and an employer may reassign an employee to an existing lower grade and paid position. *Cravens*, 214 F.3d at 1019. Thus, the defendants' determination that they could not continue to provide a third employee to perform the essential functions of Magnussen's job that she could not perform, and their offer of part-time employment instead, were appropriate, where Magnussen failed to propose any other reasonable accommodation. Magnussen's unsubstantiated assertions, made for the first time in her resistance to summary judgment, that she could have been accommodated in other ways, for example, by reconfiguring the register area to make certain things within reach, simply fail to generate a genuine issue of material fact that she could have been accommodated or that the defendants behaved unreasonably or in bad faith.

Indeed, the record shows beyond dispute that it was Magnussen, not the defendants, who must be charged with the breakdown of the interactive process. Again, Magnussen admits that, prior to her termination, she did not propose, request, or accept any accommodation of her restrictions other than Casey's paying an extra person to work in

addition to her to perform the functions of her position that she was unable to perform. The defendants were not required to offer that accommodation at all, let alone continue it indefinitely, and their proposal of part-time work as an accommodation was not unreasonable under the circumstances. Thus, Magnussen's contentions that her reassignment to a part-time position demonstrates that the defendants were refusing to accommodate her, that she was no longer required to participate in the interactive process, and that the defendants are responsible for the breakdown of the interactive process are untenable, as a matter of law. Where Magnussen is responsible for the breakdown of the interactive process, her failure-to-accommodate claim is barred. *Kratzer*, 398 F.3d at 1045; *Convergys Customer Mgmt. Group, Inc.*, 491 F.3d at 796.

Therefore, the defendants are also entitled to summary judgment on Magnussen's failure-to-accommodate claim on the alternative ground that, as a matter of law, they did not unreasonably fail to accommodate any disability. Again, this determination does not turn on whether or not the record suggests discriminatory intent, but on Magnussen's failure to generate genuine issues of material fact that the defendants' failure to accommodate her, if she was disabled, was unreasonable. Thus, none of the ordinary reluctance of courts to grant summary judgment in employment discrimination cases applies here. *See Simpson*, 425 F.3d at 542; *Woodbridge Corp.*, 263 F.3d at 814.

### E.  Magnussen's Retaliation Claim

Magnussen also asserts that the defendants retaliated against her because she requested accommodations and opposed unlawful discrimination. The defendants seek summary judgment on Magnussen's retaliation claim.

### 1.    *Arguments of the parties*

The defendants contend that, although Magnussen may be able to establish that she engaged in a statutorily protected activity by filing a charge with the ICRC and that she suffered an adverse employment action when she was terminated, the undisputed evidence negates any causal connection between the protected activity and the adverse employment action.  This is so, they contend, because it is undisputed that Von Seggern did not know about Magnussen's administrative charge until after she terminated Magnussen.  To the extent that Magnussen claims that her retaliation claim is based on her requests for accommodation, the defendants contend that there was never any retaliation, because they never denied a single request for job modification.  They also contend that Magnussen did not have a good faith, objectively reasonable belief that her request for accommodation was protected by the ADA, because she did not have a reasonable belief that she was disabled.  Regardless of these deficiencies, the defendants contend that Magnussen also admits the factual basis for her termination, her failure to cover vacant shifts, and other protected activity does not insulate an employee from discipline for violating an employer's rules.  They also argue that the two "write ups," one for exceeding restrictions and one for being rude to a customer, do not constitute actionable retaliation, because they did not affect a term or condition of Magnussen's employment and, as such, were not adverse action as a matter of law.

In response, Magnussen argues that her ICRC complaint does constitute protected activity, because she did tell some co-employees about it before her termination.  However, she explains that the protected activity that she relies upon for her retaliation claim is questioning Von Seggern on July 24, 2008, about whether Von Seggern could legally demote her to part-time when she had only temporary restrictions.  She also argues that, even if the court concludes that she did not have a "disability" under the ADA, she

clearly had many limiting ailments which affected her in various ways, thus making her belief that she was covered by the ADA reasonable and, moreover, that her belief that she was going to be automatically demoted with no further discussion about accommodations was equally reasonable. Therefore, she argues, her objection to Von Seggern about the legality of her actions was reasonable. She also contends that a reasonable jury could find that, once she complained about disability discrimination, Von Seggern began a pattern of retaliation, including two "write ups," ostracism, and eventual termination. She contends that her termination was retaliatory, because on both occasions that she left shifts vacant, she had already worked past her normal ten-hour shift, had employees coming in to cover the vacancies, and had been told by her assistant manager that she had the situation under control.

In reply, the defendants argue that Magnussen's altogether new contention that the protected activity on which her retaliation claim is based is her questioning Von Seggern about the legality of assigning her to a part-time position is still unavailing as a matter of law. They contend that Magnussen still had no objectively reasonable belief that she was entitled to decline the alternative position or that the suggestion of the position was somehow unlawful, as she did not have an objectively reasonable belief that she was disabled or that the reassignment would violate her rights if she was disabled. They also reiterate that Magnussen was legitimately terminated for failing to satisfy the duties of her position.

### 2. *Analysis*

"In order to prevail on her retaliation claim, [a plaintiff] 'need not establish the conduct which she opposed was in fact discriminatory but rather must demonstrate a good faith, reasonable belief that the underlying conduct violated the law.'" *Foster v. Time Warner Entertainment Co., L.P.*, 250 F.3d 1189, 1195 (8th Cir. 2001) (ADA case citing

*Buettner v. Arch Coal Sales, Co., Inc.*, 216 F.3d 707, 714 (8th Cir. 2000) (Title VII case), and *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (ADA case)). More specifically, "[a] person cannot show that he engaged in statutorily protected activity without first demonstrating that he had a good faith reasonable belief that the alleged retaliator was engaging in discriminatory activity." *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999) (ADA case).

Although "[p]roof of a retaliation claim is not the same as [proof of] a direct claim of disability discrimination," *Foster*, 250 F.3d at 1195, a retaliation claim under the ADA, like a disparate treatment claim, is analyzed under a *McDonnell Douglas* burden-shifting framework. *Stewart v. Independent Sch. Dist. No. 196*, 481 F.3d 1034, 1042-43 (8th Cir. 2007). More specifically,

> Under this framework, the initial burden is on the plaintiff to establish a prima facie case, consisting of evidence: "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Green [v. Franklin Nat'l Bank of Minneapolis]*, 459 F.3d [903,] 914 [(8th Cir. 2006)]. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show a "non-retaliatory reason for the adverse employment action." *Id.* (quotation marks omitted). If the defendant can show a legitimate, non-retaliatory reason for its actions, the burden returns to the plaintiff who "is 'then obliged to present evidence that (1) creates a question of fact as to whether [defendant's] reason was pretextual and (2) creates a reasonable inference that [defendant] acted in retaliation.'" *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 880 (8th Cir. 2005) (quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002)).

*Stewart*, 481 F.3d at 1043.

Assuming, without deciding, that Magnussen engaged in protected activity by protesting reassignment to a part-time position—the only ground on which she now premises her retaliation claim—and that she had a good faith reasonable belief that such a reassignment violated the ADA, Magnussen's retaliation claim ultimately founders on one of the same grounds on which I granted summary judgment on her disparate treatment claim: Magnussen cannot generate any genuine issues of material fact that she was terminated for anything other than a legitimate, non-retaliatory reason. *See id.* (explaining that, to succeed on a retaliation claim under the ADA, the plaintiff must ultimately demonstrate that the employer's proffered legitimate, non-retaliatory reason for its actions is a pretext and was, instead, retaliatory). "Although contesting an unlawful employment practice is protected conduct, the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir.) (*en banc*) (ADA case), *cert. denied*, 528 U.S. 818 (1999). As explained above, in the analysis of Magnussen's disparate treatment claim, there is no genuine dispute that Magnussen violated company policy by failing to cover the shift vacancies on August 6 and 7, 2008, herself, and instead leaving the store before the shift vacancies were covered, nor is there the merest hint from the record that the defendants' articulated reason for terminating Magnussen was false.

Under these circumstances, the defendants are also entitled to summary judgment on Magnussen's retaliation claim. Although courts are reluctant to grant summary judgment in employment cases where the disposition depends upon discriminatory intent, *see Simpson*, 425 F.3d at 542; *Woodbridge Corp.*, 263 F.3d at 814—and presumably would be equally reluctant to do so when the case depends upon retaliatory intent—even to the extent that this disposition of the retaliation claim here turns on retaliatory intent,

any reluctance to grant summary judgment is overcome by the plaintiff's failure to generate genuine issues of material fact on retaliatory intent. *See Reeves*, 530 U.S. at 143.

## III.  CONCLUSION

I find that Magnussen has failed to generate genuine issues of material fact that would preclude summary judgment on her ADA claims of disparate treatment, failure to accommodate disability, and retaliation.  Magnussen was not "disabled" within the meaning of the ADA, was not "qualified" for her position as the store manager of the Casey's General Store in Sergeant Bluff, cannot show that the defendants' proffered reason for terminating her—leaving the store with shift vacancies uncovered—is a pretext for disability discrimination or retaliation, or, even assuming that she was disabled, that the defendants are responsible for the breakdown of the interactive process to determine a reasonable accommodation.  Moreover, because Magnussen's pre-ADAAA claim and ICRA claim are analyzed under the same standards, the defendants are also entitled to summary judgment on Magnussen's parallel ICRA claims.

THEREFORE, defendants Casey's Marketing Company's and Von Seggern's February 11, 2011, joint Motion For Summary Judgment (docket no. 13) is **granted** as to all of plaintiff Magnussen's claims.  Judgment shall enter accordingly.

**IT IS SO ORDERED.**

**DATED** this 26th day of May, 2011.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA